UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - -
Jonas Schwartz                                              **21CV-1084___**

                              Plaintiff,

        -against-

Sterling Entertainment Enterprises, LLC,

                    and

SportsNet New York ("SNY")

                              Defendants.
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . x

## **VERIFIED FIRST AMENDED COMPLAINT**

## **(JURY TRIAL DEMANDED)**

Plaintiff, Jonas Schwartz (hereafter, "plaintiff" or "Schwartz") by his attorney, Kristan
Peters-Hamlin, hereby complains of defendants SportsNet New York (hereafter, "SNY") and
Sterling Entertainment Enterprises, LLC (hereafter, "Sterling"), (collectively, "the Company"
and "defendants") and alleges as follows:

### **NATURE OF THE ACTION**

1.        This is an action under 42 U.S.C.§ 1981 (equal protection of the law--race
discrimination).

2.        This Complaint is brought under the New York Human Rights Law, *N.Y.Exec.L.* §
290 *et seq.,* and the New York City Human Rights Ordinance, *N.Y. City Admin.Code* § 8–101 *et
seq*) for race, color and age discrimination and retaliation.

### **THE PARTIES, VENUE AND JURISDICTION**

3.        Plaintiff, Jonas Schwartz, is an individual residing at 20 Eno Lane, Westport,
CT 06880.  He is employed as a sportscaster, with roles as an anchor, reporter and interviewer,

in the New York office of Sterling and SNY.  Prior to the herein described illegal conduct, he had worked at the Company, for approximately twelve years.

4.     Sterling is a limited liability company, incorporated in Delaware, with its principal office at 4 World Trade Center, 150 Greenwich Street, 49th Floor, New York, NY 10007. Sterling is the owner and operator of a regional sports network currently known as "SportsNet New York" ("Channel") and multimedia platforms ("Media Platforms") which employ plaintiff.

5.     At all relevant times, defendants had in excess of fifty employees, and were employers within the meaning of federal law.

6.     Jurisdiction is appropriate in this Court under 28 U.S.C. §1332(a)(1), because the plaintiffs and defendants are citizens of different states and the amount in controversy exceeds $75,000.

7.     The jurisdiction of the Court is founded upon 28 U.S.C. §1331 (federal question). This Court has subject matter jurisdiction pursuant to 42 U.S.C.§ 1981 (equal protection of the law -- race discrimination), and has pendent jurisdiction over the state law claims.

8.     Administrative exhaustion is not required under the law for any of the claims herein.

## FACTUAL ALLEGATIONS

9.     Plaintiff's employer is Sterling and SNY ("the Company"), located at 4 World Trade Center, 150 Greenwich Street, 49th Floor, New York, NY 10007, where plaintiff was employed.

10.     Following Mr. Schwartz's herein described complaints of race, color and age discrimination, as well as retaliation, the Company informed Mr. Schwartz that he will be

terminated from the Company on February 27, 2021. However, the Company has already taken Mr. Schwartz off-air starting January 3, 2021.

11.      The evidence of race, color and age discrimination and retaliation includes, but is not limited to, the following evidence:

12.      On an all-company conference call in May 2020, Steve Raab (the President of SNY) announced that there were no anticipated additional layoffs other than those involving the off-screen employees in the spring.

13.      On June 5th, 2020, Mr. Schwartz hosted a two-part digital series on social justice and sports with Jeané Coakley, Bart Scott and Ralph Vacchiano. It was well received and everyone including Marc Davis (coordinating producer) and Brad Como (VP of newsroom content) said Schwartz handled his role well. Brad Como also acknowledged Schwartz's excellent performance months later in September on a call with Curt Gowdy and Jackie Mellett.

14.      On August 27, 2020, Schwartz was supposed to host a digital show Football night in NY with Jeané Coakley, Ralph Vachianno, and Bart Scott.

15.      Taping times had changed several times from the morning to 1pm.  Each time, the producer Gus Figueroa said he needed Schwartz on to host.

16.      The team got ready to cover how football players were walking out of practice to support social justice.

17.      Schwartz joined the Zoom call at 1pm to tape.  At this point, Jeané Coakley and Ralph Vachianno were ready, and the team was only missing Bart Scott.

18.      Jeané Coakley emotionally stated, "Why are we doing this... we've already done a show like this (two months earlier in the wake of the George Floyd incident)."  Ms.

Coakley went on to say in a loud, pained voice "**No offense, but I don't want to do this with a couple of white guys.** You can't understand what we are going through.  **Why are we doing this with white guys**?"

19.	In response to Ms. Coakely's clear discriminatory message that she did not want to go on air with "white guys," Ralph volunteered to step aside.

20.	Schwartz, however, said he believed he had a valued opinion to share, as well, but would do whatever the Company directed.

21.	Bart Scott then texted that he could not join and had to push back the taping to 5pm, and everyone agreed to wait.

22.	In the next hour, Schwartz was pulled from the show by the Coordinating producer Marc Davis.  Davis told Schwartz to "take the week off" from the show.

23.	Schwartz had never missed a taping of this show (aside for one week of vacation) since the Company had started taping shows from home when the pandemic hit.

24.	Schwartz told Marc Davis that he felt like he had been pulled due to his color and race.

25.	Davis said "I wouldn't look at it that way.  You just don't play the right position for this week's show."

26.	Schwartz responded that Davis was making clear that Schwartz's "position" in this context is his race/color.

27.	To highlight the race and color discrimination issue, Schwartz asked Davis "wouldn't it be an HR issue" to pull a host from a show on the grounds of his race if Schwartz's race were different?  Davis responded, "You are probably right."

28.      That night they taped the show with Jeané Coakley, Bart Scott and Jamaal Westerman.  Thus, as a result of Coakley's request that the two "white guys" be removed because of their race, the Company indeed *did* remove the two Caucasian panelists. The Company did not, however, discipline Ms. Coakley for making the comments.

29.      On multiple occasions in August and September, 2020, Mr. Schwartz complained about race/color discrimination to, *inter alia,* the Company's Human Resource department and upper level management concerning a critical assignment.

30.      On September 8, Schwartz reached out to his two bosses, Curt Gowdy (Vice President & Executive Producer), and Brad Como (Senior Vice President, Content Development), as well as Jackie Mellett (Human Resources Manager).  Brad and Jackie were on vacation, so Curt Gowdy suggested that he and Schwartz speak.  Schwartz apprised Gowdy of what happened.  Schwartz said he wanted to make sure it did not happen again, so they agreed to have another discussion with Como and Mellett (in H.R.)  Gowdy suggested they all have a Zoom call the following week.

31.      On September 15, all four (Como, Mellett, Gowdy and Schwartz) had the planned conversation about Schwartz's race/color discrimination complaint.

32.      Gowdy, Mellett, and Como all acknowledged the situation "wasn't handled correctly."  They all agreed Schwartz should not have been pulled because of Schwartz's race and they assured him that it would not happen again.  The Company did nothing to discipline Ms. Coakley for her discriminatory comments.  The Company did nothing to discipline Mr. Davis for his discriminatory conduct in removing Schwartz from the show for a week because of his race/color.

33.     They (Gowdy, Mellett, and Como) said Schwartz needed to understand that "they control who gets put on a show."  They conceded, however, that pulling a talented professional host because of his race was improper.

34.     Curt Gowdy did acknowledge that the way the Company handled the issue surrounding the complained of discrimination was wrong.  However, Mr. Gowdy also asserted incorrectly and in violation of the law, that he was free to make whatever personnel decisions he wanted—seemingly ignoring that he was not free to discriminate or retaliate.

35.     The parties to that meeting agreed during that meeting that Mr. Schwartz's race/color was a material factor in the decision to remove him from the assignment, that the matter was handled incorrectly and should not be handled in that way again.  Upon information and belief, the Company did nothing in 2020, however, to discipline Coakley or Davis for the above-described improper discriminatory comments or conduct.

36.     Having heard the Company's admission to improper race-based decisionmaking, Mr. Schwartz was surprised to learn merely one month later that the Company was compounding that discrimination by retaliatorily terminating him for having made a complaint to Human Resources about race and color discrimination.

37.     On October 20, Curt Gowdy and Brad Como informed Schwartz they had decided to terminate him. They claimed that Schwartz's position was being eliminated and that this decision was not in any way based on performance, but on economics.

38.     Gowdy also stated at the meeting that "these are tough economic times."

39.     This justification is pretextual, because, during the pandemic, people are home-bound and watching television even more, and there has been no cancellation of Jets games to date.

40.      The 'job elimination' justification was pretextual because there were still left two and a half more years on SNY's contract with the Jets – i.e., a host is still required to present Jets' broadcasts. Thus, the Company cannot – consistent with the Jets contract -- eliminate the position of Jets Host for the pre- and post- game shows for 2021 and 2022, otherwise the broadcasts would be host-less following Schwartz's termination.

41.      There is no indication that the Company has suffered any decline in the Jets Show revenue or profits.  https://www.msn.com/en-us/sports/mlb/asking-price-control-of-sny-network-key-factors-in-potential-sale-of-mets/ar-BB137a15 ("the Wilpon family isn't willing to part with the profitable SNY sports network in the deal, per the report"); https://nypost.com/2020/04/23/wilpons-plan-to-sell-mets-still-doesnt-include-sny/ ("The Wilpon family controls 65 percent of SNY, which results in approximately a $90 million annual dividend offsetting the team loss, the sources said.")

42.      Indeed, there were numerous raises given to employees in 2020 that contradict any assertion that there was any financial compulsion for terminating Mr. Schwartz.

43.      Despite the Jets' poor performance in 2020, the Company still has a remaining two-year obligation to host the Jets, and the Company did not have to return any subscription fees during the pandemic.

44.      During the October 20th meeting, both Gowdy and Como called Schwartz "the consummate professional."

45.      Schwartz asked who would host the Jets pre- and post- game shows (one of his roles at the network) the next two years for the remainder of the contract between the Jets and SNY.  Gowdy and Como pretextually claimed that they would have "to figure that out still."

46.     Upon information and belief, the Company plans on replacing Schwartz with a less qualified candidate for the position.

47.     On October 20, Curt Gowdy and Brad Como also pulled Schwartz off of Geico Sportsnite on the very day they informed Schwartz that he would be terminated.

48.     Since then, they have replaced him on that show ninety percent of the time with either Chris Williamson, Larry Ridley, Maria Marino or Michelle Margaux, all of whom are younger and of a different race or gender than Schwartz.

49.     Only one month transpired between Schwartz's discrimination complaint about discrimination to Curt Gowdy and Brad Como, and those same decisionmakers – Gowdy and Como-- informing Schwartz of the intended retaliatory discharge of Schwartz.

50.     The decisionmakers to whom he complained were the same persons who told Schwartz he was going to be terminated from his position.

51.     The retaliatory conduct, along with the underlying discrimination described herein, together form the essence of the complaints that Mr. Schwartz brings.

52.     Although the plaintiff is still employed at the Company without any operable contract in place, the Company has informed plaintiff that he will be terminated on February 27, 2021.

53.     There was no legal or "for-cause" basis for Mr. Schwartz's termination.  All his performance evaluations were excellent.  SNY has an additional two-year contract with the Jets, and Mr. Schwartz is the only pre- and post-game Jets host.  His positions and roles have not been eliminated.

54.     Upon information and belief, a similarly situated employee of similar experience and background, Gary Apple, who hosts the Mets, makes approximately 25% more money than Mr. Schwartz, but has not been terminated.

55.     The lay-offs in the spring only related to off-air employees, not the on-air "Performers" or "Talent."

56.     Indeed, the reorganization in October 2020 resulted in both promotions and salary increases for many.

57.     Additional anecdotal evidence of race, color and age discrimination, and retaliation, includes as follows:

    a.   When Daily News Live (a 'Meet the Press'-type show for sports that Schwartz hosted) came to an end, Schwartz asked to host the next version of the show that would air in the 5pm time slot.  Brad Como responded that Schwartz was too identified with the old show.  Como said in a meeting with several producers present: "Nobody wants to turn on the TV at 5pm and see a middle-aged white guy." This comment was ageist, racist and discriminatory.

    b.   Como then renamed the show "the Thread" and found a new host, significantly younger, who was a female in her twenties, Justine Ward.  Ward has since resigned and went back to school.

    c.   A few months before this incident with Como, the SNY President, Steve Raab, told people in Skip-level meetings that when he watches the network "all he sees is a bunch of middle-aged white guys."  This comment was ageist and racist and reveals discriminatory animus.

    d.   Schwartz is over age forty.

58.      The plaintiff, Schwartz, engaged in a "protected activity."

59.      The Company was aware of the plaintiff's participation in the protected activity.

60.      The Company promptly took an adverse employment action against the plaintiff and will imminently terminate the plaintiff.

61.      There is a causal relationship between the protected activity and the adverse employment action.

## COUNT I
### EQUAL PROTECTION OF THE LAWS
### RACE AND COLOR DISCRIMINATION
42 U.S.C.§ 1981

62.      Plaintiff repeats the allegations in paragraph 1 through 61, as though fully set forth herein.

63.      Throughout all relevant times described herein, Schwartz is and was an employee of the Company.

64.      By acts and practices described above and below, defendants discriminated against Schwartz who was qualified for his position, and was in fact praised for the shows that he hosted;

65.      Schwartz was removed on August 27, 2020 from the show for approximately one week because of his race and color; the Company admitted that racial basis for the August 27th decision to Schwartz;

66.      After Schwartz was rejected from the show on August 27th because of his race and color, he was replaced on the show for a week by individuals of another race and color;

67.      Schwartz was thereafter removed from other programming he was responsible for, entirely removed from on-air programming after January 3, 2021, and replaced with individuals who are of a different race and color;

68.     Schwartz's race and color were contributing factor to the Company's decision to terminate Schwartz.

69.     The Company provided pretextual justifications for why they were terminating Schwartz;

70.      The decisionmakers who removed Schwartz from the shows and from on-air programming and then informed Schwartz that he would be terminated, have supervisory authority, and therefore have imputed *respondeat superior* liability to the Company.

71.     Defendants are liable as plaintiff's employer.

72.     Defendants' acts and omissions were intentional, malicious and wanton.

73.     By acts and practices described above, defendants discriminated against plaintiff because of his race and color in violation of 42 U.S.C.§ 1981 by illegally removing him from programs and terminating him from positions for which he was qualified;

74.     Schwartz is now suffering and will continue to suffer irreparable injury and monetary damages and damages for mental anguish and humiliation as a result of defendant's illegal conduct. Plaintiff is entitled to an award of compensatory and punitive damages, to be determined at trial.

**COUNT II**
**RETALIATION**
42  U.S.C.§ 1981

75.     Plaintiff repeats the allegations in paragraph 1 through 74, as though fully set forth herein.

76.     Throughout all relevant times described herein, Schwartz is and was an employee of the Company.

77.     By acts and practices described above and below, defendants discriminated against Schwartz who was qualified for his position, and was in fact praised for his work and the shows that he hosted;

78.     Schwartz complained about race and color discrimination on multiple occasions in August and September 2020.

79.     Schwartz's complaints of discrimination reflected his sincere belief that he had been discriminated against. The Company never indicated that they had any concerns about the sincerity of Schwartz's belief that he was discriminated against.

80.     In the above-described September 15th meeting, Gowdy acknowledged Coakley's race-based comments and Davis' response—which was to remove Schwartz from the show – were improper.

81.     Merely a little more than a month after Schwartz's complaint in the September 15th meeting with Gowdy, Como and Mellet of race and color discrimination, Gowdy and Como informed Schwartz that he would be terminated.

82.     The Company, through Gowdy and Como, provided pretextual justifications for why they were terminating Schwartz;

83.     Gowdy, Como and the Company's decision to terminate Schwartz was in retaliation for his complaints of discrimination.

84.     Retaliation for Schwartz's complaints of discrimination was a contributing factor to the Company's decision to terminate Schwartz.

85.     The decisionmakers –-Gowdy and Como – who informed Schwartz that he would be terminated, have supervisory authority, and therefore impute *respondeat superior* liability to the Company.

86.     Defendants are plaintiff's employer and have liability for the acts and conduct of Davis, Gowdy, Mellet and Como, described herein.

87.     Defendants' acts and omissions were intentional, malicious and wanton.

88.     By acts and practices described above, defendants retaliated against Schwartz in violation of 42 U.S.C.§ 1981.

89.     Schwartz is now suffering and will continue to suffer irreparable injury and monetary damages and damages for mental anguish and humiliation as a result of defendant's illegal conduct. Plaintiff is entitled to an award of compensatory and punitive damages, to be determined at trial.

**COUNT III**
**RACE DISCRIMINATION**
in violation of New York Human Rights Law,
*N.Y.Exec.L.* § 290 *et seq.,*

90.     Plaintiff repeats the allegations in paragraph 1 through 89, as though fully set forth herein.

91.     Throughout all relevant times described herein, Schwartz is and was an employee within the meaning of *N.Y.Exec.L.* § 290 *et seq.*

92.     By acts and practices described above and below, defendants discriminated against Schwartz who was qualified for his position, and was in fact praised for the shows that he hosted;

93.     Schwartz was removed on August 27, 2020 from the show for approximately one week, solely because of his race and color; the Company admitted that racial basis for the August 27th decision to Schwartz;

94.     After Schwartz was rejected from the show because of his race and color, he was replaced on the show for a week by individuals of another race and color;

95.       Schwartz was thereafter removed from other programming he was responsible for, entirely removed from on-air programming after January 3, and replaced with individuals of a different race and color;

96.       Schwartz's race and color were contributing factors to the Company's decision to terminate Schwartz.

97.       The Company provided pretextual justifications for Schwartz's termination.

98.       The decisionmakers who removed Schwartz from the shows and from on-air programming and then informed Schwartz that he would be terminated, have supervisory authority, and therefore have imputed *respondeat superior* liability to the Company.

99.       Defendants are plaintiff's employer and have liability for the acts and conduct of Davis, Gowdy, Mellet and Como, described herein.

100.      Defendants' acts and omissions were intentional, malicious and wanton.

101.      By acts and practices described above, defendants discriminated against plaintiff because of his race and color in violation of *N.Y.Exec.L.* § 290 *et seq.,* by illegally removing him from programs and terminating him from positions for which he was qualified.

102.      Schwartz is now suffering and will continue to suffer irreparable injury and monetary damages and damages for mental anguish and humiliation as a result of defendant's illegal conduct. Plaintiff is entitled to an award of compensatory and punitive damages, to be determined at trial.

## COUNT IV
### COLOR DISCRIMINATION
in violation of New York Human Rights Law,
*N.Y.Exec.L.* § 290 *et seq.,*

103.      Plaintiff repeats the allegations in paragraph 1 through 102, as though fully set forth herein.

104.     Throughout all relevant times described herein, Schwartz is and was an employee within the meaning of *N.Y.Exec.L.* § 290 *et seq.*

105.     By acts and practices described above and below, defendants discriminated against Schwartz who was qualified for his position, and was in fact praised for the shows that he hosted.

106.     Schwartz was removed on August 27, 2020 from the show for approximately one week, because of his race and color; the Company admitted that racial/color basis for the August 27th decision to Schwartz.

107.     After Schwartz was rejected from the show on August 27th because of his race and color, he was replaced on the show for a week by individuals of another race and color.

108.     Schwartz was thereafter removed from other programming he was responsible for, entirely removed from on-air programming after January 3, 2021, and replaced with individuals who are of a different race and color.

109.     Schwartz's race and color were contributing factors to the Company's decision to terminate Schwartz.

110.     The Company provided pretextual justifications for why they were terminating Schwartz.

111.     The decisionmakers who removed Schwartz from the shows and from on-air programming and then informed Schwartz that he would be terminated, have supervisory authority over Schwartz, and therefore impute *respondeat superior* liability to the Company.

112.     Defendants are plaintiff's employer and have liability for the acts and conduct of Davis, Gowdy, Mellet and Como, described herein.

113.     Defendants' acts and omissions were intentional, malicious and wanton.

114.     By acts and practices described above, defendants discriminated against plaintiff because of his color in violation of 42 *N.Y.Exec.L.* § 290 *et seq.,* by illegally removing him from programs and terminating him from his positions for which he was qualified.

115.     Schwartz is now suffering and will continue to suffer irreparable injury and monetary damages and damages for mental anguish and humiliation as a result of defendant's illegal conduct. Plaintiff is entitled to an award of compensatory and punitive damages, to be determined at trial.

## COUNT V
## AGE DISCRIMINATION
in violation of New York Human Rights Law,
*N.Y.Exec.L.* § 290 *et seq.,*

116.     Plaintiff repeats the allegations in paragraph 1 through 115, as though fully set forth herein.

117.     Throughout all relevant times described herein, Schwartz is and was an employee of the Company within the meaning of *N.Y.Exec.L.* § 290 *et seq.*

118.     By acts and practices described above and below, defendants discriminated against Schwartz who was qualified for his position, and was in fact praised for the shows that he hosted.

119.     The Company, through its supervisors, made ageist statements and indicated a desire to get rid of 'middle-aged white guys,'

120.     Schwartz was removed from the Company's programming and replaced with individuals who are younger than he.

121.     Schwartz's age was a contributing factor to the Company's decision to terminate Schwartz.

122.     The Company provided pretextual justifications for why they were terminating Schwartz.

123.     The decisionmakers who removed Schwartz from the shows and from on-air programming and then informed Schwartz that he would be terminated, have supervisory authority, and therefore have imputed *respondeat superior* liability to the Company.

124.     Defendants are plaintiff's employer and have liability for the acts and conduct of Davis, Gowdy, Mellet and Como, described herein.

125.     Defendants' acts and omissions were intentional, malicious and wanton.

126.     By acts and practices described above, defendants discriminated against plaintiff because of his age in violation of New York State Human Rights Law, *N.Y.Exec.L.* § 290 *et seq.,* by illegally removing him from programs and terminating him from positions for which he was qualified and replacing him with younger, less qualified individuals.

127.     Schwartz is now suffering and will continue to suffer irreparable injury and monetary damages and damages for mental anguish and humiliation as a result of defendant's illegal conduct. Plaintiff is entitled to an award of compensatory and punitive damages, to be determined at trial.

### COUNT VI
**RETALIATION**
in violation of New York Human Rights Law,
*N.Y.Exec.L.* § 290 *et seq.,*

128.     Plaintiffs repeat the allegations in paragraph 1 through 157, as though fully set forth herein.

129.     Throughout all relevant times described herein, Schwartz is and was an employee within the meaning of *N.Y.Exec.L.* § 290 *et seq.*

130.     By acts and practices described above, defendants retaliated against plaintiff by illegally terminating him from his position for which he was qualified.

131.     Schwartz repeatedly complained about the race and color discrimination in August and September 2020.

132.     Schwartz's complaints of discrimination reflected his sincere belief that he had been discriminated against. Gowdy, Mellet and Como never indicated to plaintiff that they had any concerns about the sincerity of Schwartz's belief that he was discriminated against.

133.     In the above-described September 15th meeting, Gowdy acknowledged Coakley's race-based comments and Davis' response—which was to remove Schwartz from the show – were improper.

134.     Merely a little more than a month after Schwartz's complaint in the September 15th meeting with Gowdy, Como and Mellet of race and color discrimination, Gowdy and Como informed Schwartz that he would be terminated.

135.     The Company, through Gowdy and Como, provided pretextual justifications for why they were terminating Schwartz.

136.     Gowdy, Como and the Company's decision to terminate Schwartz was in retaliation for his complaints of discrimination.

137.     Retaliation for Schwartz's complaints of discrimination was a contributing factor to the Company's decision to terminate Schwartz.

138.     The decisionmakers –-Gowdy and Como – who informed Schwartz that he would be terminated, have supervisory authority, and therefore impute *respondeat superior* liability to the Company.

139.     Defendants are plaintiff's employer and have liability for the acts and conduct of Davis, Gowdy, Mellet and Como, described herein.

140.     Defendants' acts and omissions were intentional, malicious and wanton.

141.     By acts and practices described above, defendants retaliated against Schwartz in violation of *N.Y.Exec.L.* § 290 *et seq*.

142.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages and damages for mental anguish and humiliation as a result of defendant's illegal conduct. Plaintiff is entitled to an award of compensatory and punitive damages, to be determined at trial.

## COUNT VII
### RETALIATION
in violation of  the New York City Human Rights Ordinance,
*N.Y. City Admin.Code* § 8–101 *et seq*)

143.     Plaintiff repeats the allegations in paragraph 1 through 142 as though fully set forth herein.

144.     Throughout all relevant times described herein, Schwartz is and was an employee of the Company within the meaning of *N.Y. City Admin.Code* § 8–101 *et seq*

145.     By acts and practices described above and below, defendants discriminated against Schwartz who was qualified for his position, and was in fact praised for his work and the shows that he hosted;

146.     Schwartz repeatedly complained about the race and color discrimination in August and September 2020.

147.    Schwartz's complaints of discrimination reflected his sincere belief that he had been discriminated against. The Company never indicated that they had any concerns about the sincerity of Schwartz's belief that he was discriminated against.

148.    In the above-described September 15th meeting, Gowdy acknowledged Coakley's race-based comments and Davis' response—which was to remove Schwartz from the show – were improper.

149.    Merely a little more than a month after Schwartz's complaint in the September 15th meeting with Gowdy, Como and Mellet of race and color discrimination, Gowdy and Como informed Schwartz that he would be terminated.

150.    The Company, through Gowdy and Como, provided pretextual justifications for why they were terminating Schwartz;

151.    Gowdy, Como and the Company's decision to terminate Schwartz was in retaliation for his complaints of discrimination.

152.    Retaliation for Schwartz's complaints of discrimination was a contributing factor to the Company's decision to terminate Schwartz.

153.    The decisionmakers –-Gowdy and Como – who informed Schwartz that he would be terminated, have supervisory authority, and therefore impute *respondeat superior* liability to the Company.

154.    Defendants are plaintiff's employer and have liability for the acts and conduct of Davis, Gowdy, Mellet and Como, described herein.

155.    Defendants' acts and omissions were intentional, malicious and wanton.

156.    By acts and practices described above, defendants retaliated against Schwartz in violation of *N.Y. City Admin.Code* § 8–101 *et seq*)

157.      Schwartz is now suffering and will continue to suffer irreparable injury and monetary damages and damages for mental anguish and humiliation as a result of defendant's illegal conduct. Plaintiff is entitled to an award of compensatory and punitive damages, to be determined at trial.

## COUNT VIII
## AGE DISCRIMINATION
in violation of
the New York City Human Rights Ordinance,
*N.Y. City Admin.Code* § 8–101 *et seq.*

158.      Plaintiff repeats the allegations in paragraph 1 through 157, as though fully set forth herein.

159.      Throughout all relevant times described herein, Schwartz is and was an employee of the Company within the meaning of *N.Y. City Admin.Code* § 8–101 *et seq.*

160.      By acts and practices described above and below, defendants discriminated against Schwartz who was qualified for his position, and was in fact praised for the shows that he hosted.

161.      The Company though its supervisors made ageist statements and indicated a desire to get rid of 'middle-aged white guys,'

162.      Schwartz was removed from the Company's programming and replaced with individuals who are younger than he.

163.      Schwartz's age was a contributing factor to the Company's decision to terminate Schwartz.

164.      The Company provided pretextual justifications for why they were terminating Schwartz.

165.     The decisionmakers who removed Schwartz from the shows and from on-air programming and then informed Schwartz that he would be terminated, have supervisory authority, and therefore have imputed *respondeat superior* liability to the Company.

166.     Defendants are plaintiff's employer and have liability for the acts and conduct of Davis, Gowdy, Mellet and Como, described herein.

167.     Defendants' acts and omissions were intentional, malicious and wanton.

168.     By acts and practices described above, defendants discriminated against plaintiff because of his age in violation of *N.Y. City Admin.Code* § 8–101 *et seq* by illegally removing him from programs and terminating him from positions for which he was qualified and replacing him with younger, less qualified individuals.

169.     Schwartz is now suffering and will continue to suffer irreparable injury and monetary damages and damages for mental anguish and humiliation as a result of defendant's illegal conduct. Plaintiff is entitled to an award of compensatory and punitive damages, to be determined at trial.

**<u>COUNT IX</u>**
**RACE DISCRIMINATION**
in violation of
the New York City Human Rights Ordinance,
*N.Y. City Admin.Code* § 8–101 *et seq*.

170.     Plaintiff repeats the allegations in paragraph 1 through 169, as though fully set forth herein.

171.     Throughout all relevant times described herein, Schwartz is and was an employee within the meaning of *N.Y. City Admin.Code* § 8–101 *et seq*.

172.     By acts and practices described above and below, defendants discriminated against Schwartz who was qualified for his position, and was in fact praised for the shows that he hosted;

173.     Schwartz was removed on August 27, 2020 from the show for approximately one week, solely because of his race and color; the Company admitted that racial basis for the August 27th decision to Schwartz.

174.     After Schwartz was ejected from the show for about a week because of his race and color, he was replaced on the show for that week by individuals of another race and color;

175.     Schwartz was thereafter removed from other programming he was responsible for, entirely removed from on-air programming after January 3, and replaced with individuals of a different race and color.

176.     Schwartz's race was a contributing factors to the Company's decision to terminate Schwartz.

177.     The Company has provided pretextual justifications for why they were terminating Schwartz.

178.     The decisionmakers who removed Schwartz from the shows and from on-air programming and then informed Schwartz that he would be terminated, have supervisory authority, and therefore have imputed *respondeat superior* liability to the Company.

179.     Defendants are plaintiff's employer and have liability for the acts and conduct of Davis, Gowdy, Mellet and Como, described herein.

180.     Defendants' acts and omissions were intentional, malicious and wanton.

181.     By acts and practices described above, defendants discriminated against plaintiff because of his race in violation of *N.Y. City Admin.Code* § 8–101 *et seq.,* by illegally removing him from programs and terminating him from positions for which he was qualified.

182.     Schwartz is now suffering and will continue to suffer irreparable injury and monetary damages and damages for mental anguish and humiliation as a result of defendant's illegal conduct. Plaintiff is entitled to an award of compensatory and punitive damages, to be determined at trial.

**COUNT X**
**COLOR DISCRIMINATION**
in violation of
the New York City Human Rights Ordinance,
*N.Y. City Admin.Code* § 8–101 *et seq*)

183.     Plaintiff repeats the allegations in paragraph 1 through 182, as though fully set forth herein.

184.     Throughout all relevant times described herein, Schwartz is and was an employee within the meaning of *N.Y. City Admin.Code* § 8–101 *et seq*.

185.     By acts and practices described above and below, defendants discriminated against Schwartz who was qualified for his position, and was in fact praised for the shows that he hosted;

186.     Schwartz was removed on August 27, 2020 from the show for approximately one week, solely because of his race and color; the Company admitted that racial basis for the August 27th decision to Schwartz.

187.     After Schwartz was ejected from the show for about a week because of his race and color, he was replaced on the show for that week by individuals of another race and color;

188.      Schwartz was thereafter removed from other programming he was responsible for, entirely removed from on-air programming after January 3, and replaced with individuals of a different race and color.

189.      Schwartz's color was a contributing factors to the Company's decision to terminate Schwartz.

190.      The Company has provided pretextual justifications for why they were terminating Schwartz.

191.      The decisionmakers who removed Schwartz from the shows and from on-air programming and then informed Schwartz that he would be terminated, have supervisory authority, and therefore have imputed *respondeat superior* liability to the Company.

192.      Defendants are plaintiff's employer and have liability for the acts and conduct of Davis, Gowdy, Mellet and Como, described herein.

193.      Defendants' acts and omissions were intentional, malicious and wanton.

194.      By acts and practices described above, defendants discriminated against plaintiff because of his color in violation of *N.Y. City Admin.Code* § 8–101 *et seq.,* by illegally removing him from programs and terminating him from positions for which he was qualified.

195.      Schwartz is now suffering and will continue to suffer irreparable injury and monetary damages and damages for mental anguish and humiliation as a result of defendant's illegal conduct. Plaintiff is entitled to an award of compensatory and punitive damages, to be determined at trial.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, PLAINTIFF prays as follows:

196. For such nominal, compensatory, statutory, liquidated, exemplary and punitive damages as shall be found at trial, together with appropriate equitable relief;

197. For attorney's fees, costs associated with this action, expert fees and prejudgment and post-judgment interest;

198. For back pay, front pay, lost job benefits;

199. For restoration of employee benefits and reimbursement of employee benefits;

200. For declaratory relief, enjoining and permanently restraining these violations;

201. For consequential damages;

202. For pain and suffering and humiliation;

203. For such other relief as the Court deems just and proper.

## **JURY DEMANDED BY PLAINTIFFS**

Plaintiff hereby demands a trial by jury in this action.

Respectfully submitted,

PLAINTIFF

BY: *Kristan Peters-Hamlin*
Kristan Peters-Hamlin
Peters Hamlin Law, LLC
37 North Ave., Suite 201
Norwalk, CT, 06851

I, Jonas Schwartz, have read the above complaint and verify that it is true and accurate to the best of my knowledge and belief.

Jonas Schwartz,                    2/1/21
                                   date