UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
JONAS SCHWARTZ,      :
                                   :
             *Plaintiff*,      :    21-cv-01084-PAC
                                   :
      - *against* -      :    **OPINION & ORDER**
                                   :
STERLING ENTERTAINMENT      :
ENTERPRISES, LLC, and      :
SPORTSNET NEW YORK,      :
                                   :
              *Defendants*.      :
------------------------------------------------------------X

       Plaintiff Jonas Schwartz filed suit against his former employer, SportsNet New York ("SNY") and its owner and operator, Sterling Entertainment Enterprises, LLC ("Sterling," and together with SNY, the "Company"), alleging employment discrimination and retaliation in violation of 42 U.S.C. § 1981, the New York State Human Rights Law (N.Y. Exec. Law § 290 *et seq.*), and the New York City Human Rights Law (N.Y. Admin. Code § 8-101 *et seq.*). The Company moves for an order compelling Schwartz to arbitrate his claims and staying these proceedings until arbitration concludes.

       The Company argues that, by signing his employment contract, which contains an arbitration clause, Schwartz agreed to arbitrate his discrimination and retaliation claims against the Company. For the reasons that follow, the Company's motion is GRANTED; the parties are ordered to arbitration, and this action is stayed pending arbitration.

## BACKGROUND

       Schwartz worked for SNY as a sportscaster from 2009 until 2021. Compl. ¶¶ 3, 10, ECF No. 1; Schwartz Decl. ¶ 2, ECF No. 26–1; Mellett Decl. ¶¶ 3, 5, ECF No. 18. During that period, some of Schwartz's employment contracts with the Company covered multi-year periods, but the last five contracts were each for a single year. Schwartz Decl. ¶ 5; *see also* Mellett Decl.

1

¶ 4. Schwartz's final employment contract expired on December 31, 2020, but Schwartz continued working at SNY until February 27, 2021. Compl. ¶ 52; Schwartz Decl. ¶ 3; Mellett Decl. ¶ 5; Mellett Decl. Ex. E at 3 (2020 Employment Contract), ECF No. 18–5. The alleged discriminatory and retaliatory conduct occurred from August through October 2020, when the Company informed Schwartz that he would be terminated (or, as the Company frames it, that Schwartz's job was being eliminated and his contract would not be renewed). Compl. ¶¶ 14, 16, 18, 22–37; Mellett Decl. ¶ 5.

The parties agree that all relevant conduct took place during 2020 and 2021; accordingly, Schwartz's 2020 Employment Contract is the relevant contract.[1] Pl.'s Opp'n Mot. Compel Arbitration 12, ECF No. 26 ("Pl.'s Opp'n"); Defs.' Mem. Supp. Mot. Compel Arbitration 24, ECF No. 17 ("Defs.' Mem. Supp."). The 2020 Employment Contract contains two sections at issue here. First, Section 16 appears with the heading "Governing Law; Venue" and states, in relevant part: "Any litigation concerning this Agreement, if initiated by or on behalf of Performer, shall be brought only in a Federal or state court located in the Southern District of New York . . . ." Mellett Decl. Ex. E at 10. Second, Section 17 appears with the heading "Dispute Resolution" and states in full:

> Performer acknowledges and agrees that Performer will abide and be bound by NBCUniversal Media, LLC's alternative dispute resolution program known as Solutions, which has been adopted by Company and which includes an obligation to submit any Covered Claim (as such term is defined in the program) to mediation and final and binding arbitration. A copy of Solutions is attached hereto as Exhibit

---

[1] The 2020 Employment Contract specifies that Schwartz "has agreed to accept such modified and extended employment, all subject to the terms and conditions set forth below." Mellett Decl. Ex. E at 1.

2

    A. This paragraph shall survive termination or expiration of this Agreement and Performer's employment.

Mellett Decl. Ex. E at 11.

The parties dispute whether Solutions was actually attached as Exhibit A, and for the purposes of this motion, the Court assumes that it was not attached. Pl.'s Opp'n 13–16; Schwartz Decl. ¶ 12; Defs.' Mem. Supp. 6, 7, 15. Schwartz's supervisor emailed Schwartz a copy of Solutions in November 2013, however, and Schwartz forwarded that email (with the attached copy of Solutions) from his work email to his personal email in December 2020. Schwartz Decl. ¶¶ 14–17; Sandak Decl. ¶¶ 3–4, ECF No. 20; Sandak Decl. Ex. A, ECF No. 20–1; Sandak Decl. Ex. B, ECF No. 20–2. The parties dispute whether Schwartz took steps to "save" the 2013 email. Schwartz claims that he did not do anything to save it, but instead ignored it and later (in December 2020) found the email in his "all mail folder." Schwartz Decl. ¶ 16. Schwartz attests that he did not read the Solutions program until December 2020. *Id.* at ¶ 28. By contrast, Mary Faria, Director of Information Governance at NBCUniversal Media, LLC[2] attests that, pursuant to company policy that was applied to Schwartz's SNY email account, "all emails in an employee's email inbox are automatically deleted 60 days after receipt unless the recipient affirmatively saves the email to a folder not subject to the policy." Faria Decl. ¶¶ 3–4, ECF No. 28. In any event, the following facts are uncontested: (1) Schwartz received (even if he did not read) a copy of Solutions in November 2013; and (2) Schwartz was able to access (even if he did not "save") this copy of Solutions in December 2020. Solutions did not change between 2013 and 2020.[3]

---

[2] NBCUniversal is a part owner of SNY. Mellett Decl. ¶ 6.

[3] Jacqueline Mellett, SNY's Director of Human Resources, attests that Solutions "has not changed since 2011," and the 2011 version attached to her declaration (Mellett Decl. Ex. G, ECF No. 18–

3

> Solutions defines both "Covered Claims" and "Excluded Claims."
>
> Covered Claims include all claims that arise out of or are related to an employee's employment or cessation of employment (whether asserted by or against the Company), where a court in the jurisdiction in question would otherwise have the authority to hear and resolve the claim under any federal, state or local (e.g., municipal or county) statute, regulation or common law. Covered Claims do not include Excluded Claims . . . .

Mellett Decl. Ex. G at 5, ECF No. 18–7. Solutions provides that Covered Claims "may include," *inter alia*, employment discrimination claims "based on, for example, age, race, . . . or other characteristic protected by law" and "[r]etaliation claims for legally protected activity." *Id.* Excluded Claims "are claims that allege concerns such as" Employment Retirement Income Security Act, workers' compensation, or unemployment benefits claims; intellectual property claims; and claims under the National Labor Relations Act, among other examples.

Solutions sets forth (in considerable detail) the procedure for arbitrating Covered Claims. *See* Mellett Decl. Ex. G at 16–23. Solutions provides that the arbitrator will decide all Covered Claims, and delegates further authority to the arbitrator: "The Arbitrator, and not any court or agency, shall have exclusive authority to resolve any dispute relating to the applicability, interpretation, formation or enforceability of this [Solutions] Agreement including, but not

---

7) "remains in effect to this day and is the version currently applicable to SNY employees." Mellett Reply Decl. ¶¶ 3–4, ECF No. 29. Because Schwartz's position that Solutions has changed since he received a copy in 2013 is based only on his "understanding" from reading the Company's motion to compel arbitration (*see* Schwartz Decl. ¶ 33), and the Company has produced testimony evidence to the contrary, the Court concludes that there is no issue of fact on this point. Thus, the 2011 version of Solutions is the same as the copy Schwartz received in 2013 and the copy that was supposed to be attached as Exhibit A to the 2020 Employment Contract.

4

limited to, any claim that the entirety or any part of this Agreement is voidable or void." *Id.* at 21–22. The Court refers to the quoted language as the "Delegation Clause."

## DISCUSSION

### I. Applicable Law

Pursuant to the Federal Arbitration Act ("FAA"), "parties may contract to arbitrate their disputes, and such agreements are 'valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Doctor's Assocs., Inc. v. Alemayehu*, 934 F.3d 245, 250 (2d Cir. 2019) (quoting 9 U.S.C. § 2). "Where a party to an arbitration agreement refuses to comply with that agreement, and instead attempts to proceed in litigation, the other party may move to stay the litigation . . . and compel arbitration." *Chen-Oster v. Goldman, Sachs & Co.*, 449 F. Supp. 3d 216, 240 (S.D.N.Y. 2020) (citing 9 U.S.C. §§ 3, 4). However, "an agreement to arbitrate is a creature of contract," *Bell v. Cendant Corp.*, 293 F.3d 563, 566 (2d Cir. 2002), and a party cannot be forced "to submit to arbitration any dispute which he has not agreed so to submit." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (citation omitted). "The threshold question facing any court considering a motion to compel arbitration is therefore whether the parties have indeed agreed to arbitrate." *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 118 (2d Cir. 2012). The Court must look to state law (here, New York law[4]) to determine whether the parties formed a valid agreement to arbitrate. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Bell*, 293 F.3d at 566 (2d Cir. 2002).

---

[4] Both the 2020 Employment Contract and Solutions explicitly provide that they "shall be construed" under New York law, irrespective of choice-of-law principles. Mellett Decl. Ex. E at 10; Mellett Decl. Ex. G at 10. The Company argues that New York law should apply (Defs.' Mem. Supp. 10 n.6), and Schwartz has tacitly agreed by relying on New York law. *See* Pl.'s Opp'n 20–22. Therefore, "the Court analyzes the purported arbitration agreement with reference to New York law." *Mancilla v. ABM Indus., Inc.*, No. 20 Civ. 1330, 2020 WL 4432122, at *6 n.2 (S.D.N.Y. July 29, 2020).

5

"Under New York law, the party seeking arbitration . . . need only prove the existence of a valid arbitration agreement by a preponderance of the evidence . . . ." *Kutluca v. PQ New York Inc.*, 266 F. Supp. 3d 691, 700–01 (S.D.N.Y. 2017). The elements necessary for a valid contract under New York law are: "offer, acceptance, consideration, mutual assent and intent to be bound." *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 427 (2d Cir. 2004). "New York contract law presumes that a written agreement is valid and that it accurately reflects the intention of the parties, and imposes a heavy burden on the party seeking to disprove those presumptions." *Chen-Oster*, 449 F. Supp. 3d at 241–42 (quoting *Aviall, Inc. v. Ryder Sys., Inc.*, 913 F. Supp. 826, 831 (S.D.N.Y. 1996)). "Under such principles, in the absence of fraud or other wrongful act on the part of another contracting party, a party 'who signs or accepts a written contract . . . is conclusively presumed to know its contents and to assent to them . . . .'" *Gold v. Deutsche Aktiengesellschaft*, 365 F.3d 144, 149 (2d Cir. 2004) (citations omitted, omissions in original). Thus, absent fraud or other wrongful act, a party's claims that he did not read or understand the written contract he signed will not invalidate the contract. *Id.* at 149; *Badinelli v. Tuxedo Club*, 183 F. Supp. 3d 450, 456 (S.D.N.Y. 2016). This conclusive presumption of knowledge and assent applies also to the terms of a separate document that is incorporated into a contract by reference,[5] even when the party resisting arbitration contends that he never received the incorporated document. *Pagaduan v. Carnival Corp.*, 709 F. App'x 713, 716 (2d Cir. 2017); *Gold*, 365 F.3d at 146, 148–150 (defendant's alleged failure to provide

---

[5] "Under New York law, a paper referred to in a written instrument and sufficiently described may be made a part of the instrument as if incorporated into the body of it. It must be clear that the parties knew of and consented to the terms to be incorporated by reference for these terms to be valid. The papers to be incorporated by reference into the document must be so referred to and described in the instrument that the paper may be identified beyond all reasonable doubt." *Creative Waste Mgmt., Inc. v. Capitol Env't Servs., Inc.*, 429 F. Supp. 2d 582, 602 (S.D.N.Y. 2006) (internal quotation marks and citations omitted).

6

plaintiff employee with a copy of the rules (incorporated by reference into the arbitration agreement) which listed the claims that would be subject to arbitration did not render arbitration agreement unenforceable); *Baldeo v. Darden Rests., Inc.*, No. 04 Civ. 2185, 2005 WL 44703, at *4 (E.D.N.Y. Jan. 11, 2005) ("[T]he failure to read a document incorporated by reference into a valid arbitration agreement does not generally allow an employee to avoid the terms set forth in the incorporated document."); *Level Export Corp. v. Wolz, Aiken & Co.*, 111 N.E.2d 218, 220–21 (N.Y. 1953); *Nardi v. Povich*, No. 105554/06, 2006 WL 2127714, at *7 (N.Y. Sup. Ct. N.Y. Cty. July 31, 2006) ("[E]ven if Plaintiff did not receive Exhibit A, it was her responsibility to ensure that she understood the document that she signed.").

Just as parties may agree to have an arbitrator decide the merits of a dispute, they may further agree to have the arbitrator decide "'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010) (citations omitted). The FAA operates on such an "additional, antecedent agreement" the same way it operates on any other arbitration agreement. *Id.* at 70. Thus, "where the parties 'clearly and unmistakably' agree to arbitrate threshold questions such as whether the arbitration clause applies to a particular dispute, or whether it is enforceable," *Doctor's Assocs.*, 934 F.3d at 250–51, the Court must honor that agreement and leave such questions to the arbitrator. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529, 530 (2019). But the "parties may not delegate to the arbitrator the fundamental question of whether they formed the agreement to arbitrate in the first place."[6] *Doctor's Assocs.*, 934 F.3d at 251 (citing *Granite Rock Co. v. Int'l Brotherhood of Teamsters*,

---

[6] That is so because "[a]n agreement that has not been properly formed is not merely an unenforceable contract; it is not a contract at all. And if it is not a contract, it cannot serve as the basis for compelling arbitration." *Doctor's Assocs.*, 934 F.3d at 251.

7

561 U.S. 287, 299–301 (2010)). Therefore, regardless of any delegation clause, *the Court* must first determine whether the parties in fact formed an agreement to arbitrate. *See id.*; *Henry Schein*, 139 S. Ct. at 530.

When deciding a motion to compel arbitration, the Court applies "a standard similar to that applicable for a motion for summary judgment." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017) (citation omitted). "[T]he parties may submit documents in support or opposition . . . , and the court considers all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, and draws all reasonable inferences in favor of the non-moving party." *Murray v. DCH Toyota City*, No. 20 Civ. 7383, 2021 WL 1550074, at *2 (S.D.N.Y. Apr. 20, 2021) (cleaned up). The movant must make a prima facie showing that the parties had an agreement to arbitrate, after which "the burden shifts to the party opposing arbitration to put the making of that agreement 'in issue.'" *Chen-Oster*, 449 F. Supp. 3d at 240 (quoting *Hines v. Overstock.com, Inc.*, 380 F. App'x 22, 24 (2d Cir. 2010)). "'If undisputed facts in the record require[] the issue of arbitrability to be resolved against the [p]laintiff as a matter of law,' then a district court must compel arbitration." *Shetiwy v. Midland Credit Mgmt.*, 959 F. Supp. 2d 469, 473 (S.D.N.Y. 2013) (quoting *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003)) (alterations in original); 9 U.S.C. § 4. Further, the FAA requires the Court to stay proceedings "after all claims have been referred to arbitration and a stay requested." *Katz v. Cellco P'Ship*, 794 F.3d 341, 345 (2d Cir. 2015) (discussing 9 U.S.C. § 3).

8

## II. Application

### A. A Validly-Formed Agreement to Arbitrate Exists

Schwartz and Sterling validly formed an agreement to arbitrate.[7] Schwartz does not contest that he signed the 2020 Employment Contract or that the clear language of Section 17 of that agreement calls for the "final and binding arbitration" of Covered Claims, as defined by Solutions. Mellett Decl. Ex. E at 11. Further, Schwartz admits that he read the 2020 Employment Contract. Pl.'s Opp'n 14. Schwartz argues that there is no agreement to arbitrate because (1) Solutions was not validly incorporated by reference into the 2020 Employment Contract; and (2) Section 16 and Section 17 of the 2020 Employment Contract are in conflict, so the Court should construe the contract against the Company[8] and find that there is no agreement to arbitrate. Both arguments are without merit.

*First*, Solutions was properly incorporated by reference into the 2020 Employment Contract. The Company need not have actually attached Solutions as Exhibit A to incorporate Solutions by reference.[9] *Gold*, 365 F.3d at 146, 148–150; *Baldeo*, 2005 WL 44703, at *4; *Level Export*, 111 N.E.2d at 220–21; *Nardi*, 2006 WL 2127714, at *7. In opposing this conclusion,

---

[7] Schwartz has not argued specifically that because SNY is a non-signatory to the arbitration agreement, SNY cannot compel arbitration of Schwartz's claims against SNY. To the extent that any such argument is lurking in Schwartz's opposition, the Court notes that, given the corporate relationship between the defendants and the fact that Schwartz asserts identical claims against each defendant, Schwartz is equitably estopped from refusing to arbitrate his claims against SNY on the grounds that SNY is a non-signatory to the arbitration agreement. *Jules v. Andre Balazs Props.*, No. 20 Civ. 10500, 2021 WL 2183098, at *6 (S.D.N.Y. May 28, 2021).

[8] The doctrine of *contra proferentum* is applied only "as a matter of last resort," and the Court need not resort to it here, where "any ambiguities are capable of being resolved by reading the two provisions in tandem." *Hudson Specialty Ins. Co. v. N.J. Transit Corp.*, No. 15 Civ. 89, 2015 WL 3542548, at *6 (S.D.N.Y. June 5, 2015) (citation and internal quotation marks omitted).

[9] Schwartz does not argue that Solutions was insufficiently described for incorporation by reference.

9

Schwartz argues that "this case is more like" *Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 170 F.3d 1 (1st Cir. 1999) than *Gold*. Pl.'s Opp'n 15–16. In *Rosenberg*, the First Circuit held that where the employer failed to provide its employee with the arbitration rules referenced in the arbitration agreement (despite certifying that the employee would be familiar with those rules), the employer bore the risk of the employee's ignorance, and compelled arbitration under those rules was inappropriate. *Rosenberg*, 170 F.3d at 19. But in *Gold*, the Second Circuit explicitly declined to follow *Rosenberg* (on the same set of operative facts) and held instead that "even if [the plaintiff] did not understand the form or had questions about the arbitration clause or the rules, as he alleges, the burden was upon him to have his concerns addressed before signing" the form. *Gold*, 365 F.3d at 149. *Gold* is binding on this Court; *Rosenberg* is not. Moreover, even assuming that Solutions was never attached to the 2020 Employment Contract, it is undisputed that Schwartz had a copy of Solutions as long ago as 2013, and was able to access that copy in December 2020, after a dispute arose between Schwartz and the Company. Schwartz cannot seriously contend that he had no notice of Solutions' terms or that he was unable to access Solutions.[10] Schwartz has not claimed any

---

[10] *D'Antuono v. Service Road Corp.*, 789 F. Supp. 2d 308, 325 (D. Conn. 2011) does not support Schwartz's position. Schwartz cites *D'Antuono* for the proposition that "where a company waited a long time to provide employees with a copy of the lease containing the arbitration agreement, the only reasonable inference was that the plaintiff never saw it." Pl.'s Opp'n 16. There, one plaintiff (Cruz) was not compelled to arbitration, because the defendant had not produced any evidence showing that Cruz *ever* received the lease. *D'Antuono*, 789 F. Supp. 2d at 325. Though defendants had a policy of providing the lease to employees at some point, and obtaining a signed copy from the employee at some later point, the court held that, because the other two plaintiffs were not shown the lease until they had worked for nearly a year, and Cruz had worked only a few months, the only reasonable inference was that Cruz never saw the lease and had no opportunity to consent to it. *Id.* Schwartz is unlike Cruz; he is like the other two plaintiffs in *D'Antuono*, whom the court ordered to arbitration because they had actually received and signed the lease containing the arbitration agreement. *Id.* at 314, 322–24, 344. The arbitration agreement here is in Schwartz's 2020 Employment Contract, which he read and signed, and the terms incorporated by reference (e.g., the definition of Covered Claims) were

duress, fraud, or other wrongdoing by the Company; thus, Schwartz is conclusively presumed to have known of and assented to the terms of the 2020 Employment Contract and Solutions, and to the extent that Schwartz remained ignorant of them, he bears the cost of that ignorance. *Gold*, 365 F.3d at 149–150.

The arbitration agreement in Section 17 is both "broad and plain." *Gold*, 365 F.3d at 150. The arbitration agreement is broad because it obligates Schwartz to submit "any" Covered Claim to arbitration (and Solutions broadly defines Covered Claims, as set forth *supra* at page four). The arbitration agreement is plain because it clearly states that Covered Claims, as defined in Solutions, are subject to "final and binding arbitration." Mellett Decl. Ex. E at 11; *see Gold*, 365 F.3d at 150; *Badinelli*, 183 F. Supp. 3d at 453, 456 (finding arbitration clause "broad and plain" despite excluding some claims from arbitration, and concluding that it provided the plaintiff with notice of his arbitration obligation "regardless of whether the rules governing the arbitration were included").[11]

*Second*, to the extent that Sections 16 and 17 of the 2020 Employment Contract can be read to conflict, that conflict is reconcilable, and it does not affect the formation of the arbitration

---

included in Solutions, which Schwartz had a copy of prior to signing the 2020 Employment Contract.

[11] Schwartz contends that "[t]his case is . . . more like the Supreme Court's decision in *Wright v. Universal Maritime Service Corp.*, 525 U.S. 70 (1998). There the court declined to mandate arbitration of an ADA claim where the waiver of a judicial forum set forth in a CBA was not 'clear and unmistakable.'" Pl.'s Opp'n 15. But *Wright* is inapposite: the *Wright* Court specifically remarked that the "clear and unmistakable" standard applies where a union waives the rights of represented employees to a judicial forum for the resolution of employment discrimination claims; that standard is "not applicable" where (as here) an individual waives his own rights by agreeing to arbitration. 525 U.S. at 80–81. This is not to be confused with the requirement, noted *supra* at page seven, that to be valid, delegation clauses must clearly and unmistakably delegate arbitrability questions to the arbitrator.

agreement in Section 17.[12] "[W]here two seemingly conflicting contract provisions reasonably can be reconciled, a court is required to do so and to give both effect." *Price v. Cushman & Wakefield, Inc.*, 808 F. Supp. 2d 670, 703 (S.D.N.Y. 2011) (quoting *HSBC Bank USA v. Nat'l Equity Corp.*, 719 N.Y.S.2d 20, 22 (N.Y. App. Div. 1st Dep't 2001)). Section 16 states that "[a]ny litigation concerning this Agreement, if initiated by or on behalf of [Schwartz], shall be brought only in a Federal or state court located in the Southern District of New York." Mellett Decl. Ex. E at 10. Section 17 states that Schwartz agrees to "abide and be bound by" Solutions, which obligates him to submit any Covered Claim to final and binding arbitration. *Id.* at 11. These provisions are plainly complementary because, read together (and with reference to Solutions), they permit Schwartz to bring (1) Excluded Claims and (2) litigation to confirm or vacate an arbitral award concerning the 2020 Employment Contract in federal or state court within this District, and require Schwartz to arbitrate Covered Claims. *See Lahoud v. Document Techs. LLC*, No. 17 Civ. 1211, 2017 WL 5466704, at *5–6 (S.D.N.Y. Nov. 14, 2017). This is not a case in which a forum selection clause specifically supersedes or precludes an arbitration clause, or vice versa. *See id.*; *compare Flexport, Inc. v. W. Glob. Airlines*, No. 19 Civ. 6383, 2020 WL 7028908, at *5 (S.D.N.Y. Nov. 30, 2020) (holding that the existence of two mandatory and all-inclusive clauses, each "provid[ing] for exclusive jurisdiction in different fora," prevented the court from finding an agreement to arbitrate, as "neither admits the possibility of the other" (citation omitted)). Despite Schwartz's arguments to the contrary, there is no natural reading of Section 16 that grants Schwartz "an indisputable right to bring 'any litigation' in the

---

[12] The Company argues that, pursuant to the Delegation Clause, the issue of any alleged conflict between these provisions is for the arbitrator to decide. Defs.' Mem. Supp. 19–20. But where a conflict between an agreement's "court and arbitration provisions" touches on contract formation, the conflict is an issue for the Court. *Flexport, Inc. v. W. Glob. Airlines*, No. 19 Civ. 6383, 2020 WL 7028908, at *6 n.3 (S.D.N.Y. Nov. 30, 2020).

New York courts." Pl.'s Opp'n 14. In any event, that strained reading would not comport with the requirement to reconcile apparent conflicts where reasonably possible, as it would completely read Section 17 out of the 2020 Employment Contract.

Accordingly, the Court finds as a matter of law that Schwartz and Sterling formed an agreement to arbitrate under New York law. That agreement (found in Section 17 of the 2020 Employment Contract) incorporated Solutions by reference, including Solutions' Delegation Clause.

### B. Enforceability Issues Are For the Arbitrator to Decide

Schwartz does not challenge the Delegation Clause; in fact, his opposition does not mention the Delegation Clause. Instead, Schwartz argues that the arbitration agreement as a whole is unconscionable. *See* Pl.'s Opp'n 22–23. The plain language of the Delegation Clause shows that Schwartz and Sterling have clearly and unmistakably delegated questions of arbitrability to the arbitrator: "The Arbitrator, and not any court or agency, shall have exclusive authority to resolve any dispute relating to the applicability, interpretation, formation or enforceability of this [Solutions] Agreement including, but not limited to, any claim that the entirety or any part of this Agreement is voidable or void." Mellett Decl. Ex. G at 22; *Arkin v. DoorDash, Inc.*, No. 19 Civ. 4357, 2020 WL 4937825, at *4–5 (E.D.N.Y. Aug. 24, 2020) (finding similar language a "clear and unmistakable agreement to delegate questions of enforceability to an arbitrator"). "[T]he law is clear that absent a specific challenge, the delegation of the questions of unconscionability and enforceability of an arbitration agreement to an arbitrator must be upheld." *Vargas v. Bay Terrace Plaza LLC*, 378 F. Supp. 3d 190, 196–97 (E.D.N.Y. 2019) (citing *Rent-A-Center*, 561 U.S. at 72–74); *see also Arkin*, 2020 WL 4937825, at *5 ("[B]ecause unconscionability is a question of enforceability, the court may not contravene

the expressed intent of the parties to delegate questions of enforceability to the arbitrator.").
Accordingly, the Court may not reach Schwartz's unconscionability argument; Schwartz must
bring that argument before the arbitrator. *Henry Schein*, 139 S. Ct. at 530; *Ward v. Ernst & Young U.S. LLP*, 468 F. Supp. 3d 596, 603–04 (S.D.N.Y. 2020).

## CONCLUSION

The Company's motion to compel arbitration is granted, and the action is stayed pending arbitration. The Clerk of Court is directed to terminate the motion at ECF number 16 and administratively close this case, without prejudice to Schwartz's ability to submit a letter motion to reopen the case within thirty days of the conclusion of the arbitration proceedings.

Dated: New York, New York
September 23, 2021

SO ORDERED

*[signature]*

HONORABLE PAUL A. CROTTY
United States District Judge